IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DOEHLER NORTH AMERICA, INC.,

       *Plaintiff,*

    v.

RUSSELL LEE DAVIS and
CROSSKEYS ASSOCIATES
LIMITED,

       *Defendants.*

Civil Action No. 22-00501-RGA

## MEMORANDUM ORDER

Before the Court is Plaintiff's Motion for Temporary Restraining Order and Defendants'

Motion to Stay Litigation. (D.I. 5, 12). Plaintiff opposes Defendants' motion. (D.I. 16). Both

Defendants oppose Plaintiff's motion. (D.I. 15). I have reviewed the parties' briefing. (D.I. 6, 12,

15, 16, 18).

## I.    BACKGROUND

Plaintiff Doehler North America Inc. ("DNA") filed suit against Defendants Russell Lee

Davis and Crosskeys Associates Limited ("CKAL") seeking injunctive relief and damages under

the Agreement Among Initial Members of Doehler Dry Ingredients Solutions, LLC ("Member

Agreement") and the Operating Agreement of Doehler Dry Ingredients Solutions, LLC

("Operating Agreement") (D.I. 2 at 14-17, D.I. 2-1). This action concerns membership units of

Doehler Dry Ingredients Solutions, LLC ("DDIS"),[1] a company involved in the freeze-dried fruit

---

[1] Plaintiff and Defendants do not agree on the name of DDIS. *Compare* D.I. 2 at ¶ 2; D.I. 2-1, Ex. A-1 at 1, D.I. 5 at 1, *with* D.I. 2-1, Ex. B at 1 *et passim*; D.I. 12 at 1; D.I. 15-1, Ex. A at 1. The Court adopts Plaintiff's style: Doehler Dry *Ingredients* Solutions, LLC.

and vegetable business. (D.I. 2 at ¶ 17). DDIS, DNA, Davis, CKAL, and others entered into the

Operating Agreement "to set out fully their respective rights, obligations and duties regarding"

DDIS. (D.I. 2-1, Ex. B at 1). DNA, Davis, CKAL, and others entered into the Member

Agreement to provide for the "start-up and early and middle-stage management and processes of

and for" DDIS. (D.I. 2 at ¶ 20; 2-1, Ex. A-1 at 1). Plaintiff's copies of these Agreements indicate

that they occurred on the same day, November 1, 2017, and that the Member Agreement was

amended on November 15, 2017. (D.I. 2-1, Ex. A-1 at 1; Ex. A-2 at 1; Ex. B at 1). Defendants

dispute the dating of the Member Agreement. (D.I. 15 at 12).

On January 26, 2022, DNA delivered notice to CKAL that it wished to exercise its right

to purchase CKAL's units of DDIS – totaling twenty-five percent of the total units of DDIS –

under the cross-transfer purchase provisions of the Membership Agreement. (D.I. 2 at ¶¶ 27-28).

On February 15, CKAL responded that it would not comply with this request. (D.I. 2 at ¶ 32). On

March 25, Davis sent email communications directing recipients to contact Davis and others at

external email addresses, claiming that his and two other email accounts "have been

compromised." (D.I. 2 at ¶ 42). The parties dispute the factual circumstances of these

communications. (D.I. 2 at ¶¶ 41-49; D.I. 15 at 14-15). Plaintiff sent Davis a cease-and-desist

notice on March 29, and Davis refused to comply by written response on April 6. (D.I. 2 at ¶¶

47-48). This action was filed on April 20. (D.I. 2).

Plaintiff's motion requests that the Court enjoin Davis from interfering with the relations

or arrangements of DNA or DDIS and from using email addresses established by Davis for

DDIS business. (D.I. 5 at 1-2). Defendants' motion requests that the Court stay proceedings in

this case until the resolution of litigation pending before the Delaware Court of Chancery. (D.I.

12 at 1). The action before the Court of Chancery, styled *In re: Dissolution of Doehler Dry*

*Ingredient Solutions, LLC*, Del. Ch. C.A. No. 2022-0354, was filed on April 21, 2022, the day after this action was filed. (*See* D.I. 12 at 1-2). In that action, Defendants petition the Court of Chancery to dissolve DDIS and to grant permission to wind up its affairs. (D.I. 12 at 2).

## II.    ORIGINAL JURISDICTION

Under 28 U.S.C. § 1332(a)(2), this Court has original jurisdiction over civil actions if (a) complete diversity of citizenship exists between the parties and (b) the amount in controversy exceeds $75,000. Complete diversity does not exist "if any plaintiff and any defendant are citizens of the same state." *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 290 (3d Cir. 1998) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)). Here, no party disputes that the amount in controversy requirement is satisfied. However, Defendants point out that DDIS is a limited liability company formed in Delaware and that DNA is a Delaware corporation. (D.I. 15 at 2-3; D.I. 2 at ¶ 5, 18). Defendants argue that Plaintiff has failed to join an indispensable party, DDIS, and that once DDIS is joined as a defendant, this Court will lose its diversity jurisdiction over the case because DDIS and DNA are not diverse parties.

Federal Rule of Civil Procedure 19 provides a two-step analysis for determining whether a party must be joined to a case. The Court must first determine whether DDIS is "a so-called 'necessary' party who must be joined under Rule 19(a) if joinder is feasible." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993). Rule 19(a) states, in relevant part:

> A person . . . shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

3

Fed. R. Civ. P. 19(a). If the Court determines that DDIS is a necessary party, then it must

determine whether DDIS is an "indispensable party" under Rule 19(b). If the Court determines

that DDIS is not a necessary party, DDIS need not be joined. *See Kuhn Constr. Co. v. Ocean &*

*Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 686 (D. Del. 2010) ("[I]f a party is not necessary

under Rule 19(a), the court need not conduct an analysis under Rule 19(b).").

Defendants argue that DDIS is a necessary party because Plaintiff is seeking relief

"directly and derivatively on behalf of DDIS." (D.I. 15 at 6). Defendants point to Plaintiff's

proposed Order, which reads in relevant part: "That Davis, and anyone associated with or acting

in concert with Davis, be enjoined from interfering or attempt to interfere with the relations of

DDIS, including with any person who is an employee, consultant, customer, client, vendor,

distributor, or supplier of DDIS[.]" (D.I. 5-1 at ¶ 1). But Defendants cite no authority and

provide no argument for the conclusion that a motion for injunctive relief involving DDIS makes

DDIS a necessary party under Rule 19(a). Rule 19(a) requires complete relief for the parties

present, not for those absent from the suit. *See Field v. Volkswagenwerk AG*, 626 F.2d 293, 301

(3d Cir. 1980) (complete relief "refers to relief as between the persons already parties, not as

between a party and the absent person whose joinder is sought, and mere theoretical

considerations of disposing of the whole controversy should not be employed"). "The effect a

decision may have on the absent party is not material" to determining whether complete relief is

possible without the absent party. *Janney Montgomery Scott*, 11 F.3d at 405. Nor have

Defendants shown that resolving the present case would harm DDIS' interests or expose

Defendants to inconsistent obligations. Plaintiff alleges that Defendants were obligated under the

Agreements to sell Defendants' units of DDIS to Plaintiff. (D.I. 18 at 2). DDIS was not a party to

these agreements. For these reasons, I conclude that DDIS is not a necessary party under Rule 19(a) and need not be joined.

Defendants also fail to establish that Plaintiff's claims are derivative claims. Whether a claim is direct or derivative depends on "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). Here, Plaintiff seeks enforcement of an agreement between Plaintiff and Defendants. (D.I. 18 at 4). Defendants have not argued that the Complaint alleges that DDIS suffered the harms giving rise to the breach of contract claims. Nor have Defendants argued that Plaintiff's proposed relief would benefit DDIS. Consequently, Plaintiffs' claims are all direct claims for relief, and DDIS need not be joined as a defendant in this case.

Because DDIS is not a necessary party and Plaintiff's action is a direct action, diversity jurisdiction exists.

## III.   MOTION TO STAY

Defendants move to stay proceedings in this case until the resolution of the case before the Court of Chancery. (D.I. 12 at 1).

Courts have discretion to stay the proceedings of a case.[2] *Landis v. N. Am. Co.*, 299 U.S. 248, 252 (1936); *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985).  In exercising this discretion, courts consider three factors: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, i.e., the balance of harms; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay

---

[2] Neither party raises abstention issues in connection with the motion for a stay.

will promote judicial economy, e.g., how close to trial has the litigation advanced." *Husqvarna AB v. Toro Co.,* 2016 WL 5213904, at 3* (D. Del. Sept. 30, 2016) (citing *Cheyney State Coll. Fac. v. Hufstedler,* 703 F.2d 732, 737-38 (3d Cir. 1983)).

First, Defendants assert that a stay will not unduly prejudice Plaintiff because the stay would only last until the end of the dissolution proceeding in the Court of Chancery. (D.I. 12 at 4). But Defendants ignore several tactical advantages that they would enjoy if this Court granted a stay until then. As Plaintiff observes, granting the stay would allow the later-filed action in the Court of Chancery to take precedence over this first-filed case. (D.I. 16 at 12). If the Court of Chancery were to dissolve DDIS, then this Court would not be able to award specific performance, that is, compel Defendants to transfer their units of DDIS to Plaintiff. Because these key effects of granting a stay benefit Defendants and disadvantage Plaintiff, this first factor weighs against granting the motion to stay.

Second, Defendants emphasize the ability of a stay to simplify litigation. (D.I. 12 at 3). They assert that if the Court of Chancery dissolves DDIS, then Plaintiff's claims against Defendants will become moot or be resolved during that proceeding. *Id.* Plaintiff argues that the dissolution proceeding will not resolve Plaintiff's claims for breach of the Member or Operating Agreements. (D.I. 16 at 4). The Court finds that a stay of this proceeding is unlikely to simplify the issues surrounding Defendants' obligations to Plaintiff under the Member and Operating Agreements. As Plaintiff notes (D.I. 16 at 14), denying the motion to stay may simplify the dissolution proceeding by ensuring that Defendants have standing to bring that suit given their obligations under the Member and Operating Agreements. Resolving Plaintiff's breach of contract claims could substantially simplify the dissolution proceeding, but the reverse is less likely. The second factor does not weigh in favor of granting the motion to stay.

6

Third, Defendants assert that considerations of judicial economy "strongly" weigh in favor of a stay because the case was just filed and briefing was not due at the time of submission. (D.I. 12 at 4). But because both sides have already briefed the TRO motion, this point fails to support granting the motion to stay.

Consideration of these three factors does not justify granting Defendants' motion to stay. Consequently, the Court will deny the motion to stay proceedings.

## IV.    MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff filed a motion for a temporary restraining order barring Defendants from interfering with the activities of DDIS or DNA. (D.I. 5). Defendants were given notice and an opportunity to respond, and this motion was briefed by both sides. (D.I. 15, 18). The Court will thus apply the legal standards for preliminary injunctions to adjudicate the motion.

### A.    Legal Standard

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. A preliminary injunction is an "extraordinary remedy" to be granted "only in limited circumstances." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)). The purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held" in order to "allow a victory by [the plaintiffs] to be meaningful." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "The decision whether to enter a preliminary injunction is committed to the sound discretion of the trial court." *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1437 (3d Cir. 1994) (quoting *Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co.*, 963 F.2d 628, 633 (3d Cir. 1992)). When seeking a preliminary injunction, the movant must show: "(1) a

7

likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is

denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving

party; and (4) that the public interest favors such relief." *Child Evangelism Fellowship of N.J.*

*Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004); *see Winter v. NRDC, Inc.*, 555

U.S. 7, 20 (2008). The "failure to establish any element . . . renders a preliminary injunction

inappropriate." *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

### B.      Discussion

In order to meet the irreparable harm requirement, Plaintiff "must demonstrate potential

harm which cannot be redressed by a legal or an equitable remedy following trial. The

preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air*

*Freight*, 882 F.2d at 801. "[T]he injury must be of a peculiar nature, so that compensation in

money cannot atone for it." *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987).

Plaintiff argues that reputational harm and loss of goodwill due to Davis' emails suffice

to show irreparable harm. (D.I. 6 at 15-16). Plaintiff alleges that Davis falsely reported a data

breach to DDIS, which in turn caused reputational damage to DNA. (D.I. 6 at 16). Plaintiff also

alleges that management of DDIS will be hindered unless Defendants are enjoined from using

email addresses "solely controlled by Davis or CKAL." (D.I. 6 at 16). Plaintiff alleges that Davis

refused to cease and desist from rerouting emails to an external account. (D.I. 2 at 47-48).

As an initial matter, Plaintiff attempts to show irreparable harm to DNA by showing that

DDIS would suffer irreparable harm. But as the Court held above, DNA has not asserted

derivative claims on behalf of DDIS. Plaintiff has not provided any evidence linking the

reputation of DNA to the reputation of DDIS. Plaintiff asserts that "DDIS will be unable to

effectively communicate with its employees" without a preliminary injunction. (D.I. 6 at 16). But

8

to the extent that DNA is claiming that DNA is harmed as a result of being a member of DDIS, it is reciting a derivative claim. *See Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008) ("The mere fact that the alleged harm is ultimately suffered by . . . the stockholders does not make a claim direct under *Tooley*. In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large.").

Even if evidence of a link between DNA's reputation and DDIS' reputation were proffered, Plaintiff's evidence of reputational harm to DDIS is thin. As its primary support, Plaintiff claims that "DNA has suffered reputational harm from the false claim of a DDIS data breach" because "suppliers, clients, and key stakeholders believe that DDIS's email servers have been compromised." (D.I. 6 at 16). But Plaintiff does not explain why a single email from Davis alleging that three email accounts "have been compromised" (D.I. 2 at ¶ 42) would harm DDIS at all, much less irreparably. Moreover, Defendants claim that at least one other member of DDIS, Garry Beckett, was under the impression that Davis's email was indeed hacked. (D.I. 15 at 14). Plaintiff does not address this claim in either of its replies. (D.I. 16, 18). The Court is thus left with an email reporting three compromised email accounts to clients, and remarks from another member supporting those reports. This is not enough to show reputational harm to DDIS, much less to DNA.

For these reasons, the Court finds that Plaintiff has failed to show that it will undergo irreparable harm without a preliminary injunction. Because the irreparable harm element is dispositive for this motion, the Court need not consider the other elements. The motion for a temporary restraining order will be denied.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Temporary Restraining Order (D.I. 5) is

DENIED, and Defendants' Motion to Stay Litigation (D.I. 12) is DENIED.


IT IS SO ORDERED this /5 day of July 2022.


_____
United States District Judge

10